788 F.2d 250
 Richard Joseph DOUCET, Plaintiff-Appellant,
v.
GULF OIL CORPORATION, Defendant-Appellee.
Richard Joseph DOUCET, Plaintiff,
v.
GULF OIL CORPORATION, Defendant-Third Party Plaintiff-Appellee,
v.
DANOS & CUROLE MARINE CONTRACTORS, INC., Third Party
Defendant-Appellant,
Richard Joseph DOUCET, Plaintiff-Appellee,
v.
GULF OIL CORPORATION, Defendant-Third Party
Plaintiff-Appellee Cross-Appellant,
v.
DANOS & CUROLE MARINE CONTRACTORS, INC., Third Party
Defendant-Appellant Cross-Appellee.
 Nos. 83-3711, 84-3434 and 84-3612.
 United States Court of Appeals,
Fifth Circuit.
 April 25, 1986.
 
 Kevin A. Galatas, New Orleans, La., Joshua A. Tilton, Baton Rouge, La., for plaintiff-appellant and amicus Tenneco.
 Grady S. Hurley, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert M. Contois, New Orleans, La., for Gulf Oil Corp.
 Guy E. Wall, New Orleans, La., for amicus-Tenneco.
 Joseph A. Reilly, Jr., Henderson, Hanemann & Morris, J. Mark Graham, Houma, La., for Danos & Curole Marine Contractors, Inc.
 
 
 1
 Kevin A. Galatas, New Orleans, La., Joshua A. Tilton, Baton Rouge, La., for amicus-Tenneco in 84-3612.
 
 
 2
 Appeals from the United States District Court for the Eastern District of Louisiana.
 
 
 3
 Before RUBIN and REAVLEY, Circuit Judges, and POLOZOLA*, District Judge.
 
 ON PETITION FOR REHEARING
 
 4
 (Opinion February 20, 1986, 5th Cir.1986, 783 F.2d 518)
 
 PER CURIAM:
 
 5
 All of the parties agree that Louisiana's Oilfield Indemnity Act[1] cannot be applied if it is inconsistent with the Outer Continental Shelf Lands Act[2] or "other Federal laws and regulations of the Secretary" of the Interior.[3] In its application for rehearing, Gulf Oil Company contends that the decision of the Supreme Court in United States v. Seckinger[4] adopts the rule that federal common law controls both the validity and interpretation of indemnity clauses in contracts for work on the outer continental shelf. We do not so interpret Seckinger.
 
 
 6
 In Seckinger, the Court held that federal law controlled the interpretation of a contract between the federal government and a plumbing contractor in a suit brought under the Federal Tort Claims Act.[5] The Court naturally, indeed inevitably, applied federal law to interpret "the meaning of the words of a clause in a government contract."[6] "This conclusion," the Court said, "results from the fact that the contract was entered into pursuant to authority conferred by federal statute and, ultimately, by the Constitution."[7]
 
 
 7
 In Smith v. United States,[8] we followed Seckinger and held federal common law applicable to the interpretation of an indemnity agreement in a government contract for the construction of a levee. Neither decision involves the outer continental shelf and neither purports to fashion a general federal common-law rule on contractual indemnity.
 
 
 8
 Prior to our decision in this case, another panel of this court had held that the Louisiana Oilfield Indemnity Act applies to private contracts for work relating to the development of natural resources on the outer continental shelf,[9] as two district courts had already held.[10] In Knapp v. Chevron USA, Inc.,[11] we concluded that the Louisiana Act is not in conflict with the Longshore and Harbor Workers Compensation Act.[12]
 
 
 9
 Following our decision in this case, another panel considered whether the Louisiana Act conflicts with federal common law. In Matte v. Zapata Offshore Co.,[13] that panel held that the Louisiana Act is not in conflict with federal law relying, in part, on our decision in this case but adding:
 
 
 10
 As the Supreme Court made abundantly clear in Rodrigue, [v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969)], Congress intended that the law of the adjacent state would become surrogate federal law on fixed platforms on the Shelf, to the exclusion of rules of admiralty and common law. Even if Seckinger accurately reflected the federal common law applicable in an instance as is here presented, a proposition we do not accept, Seckinger 's holding and rationale would not displace the law of Louisiana as 'the law of the United States' on the Shelf adjoining Louisiana.[14]
 
 
 11
 This conclusion conflicts with nothing in Seckinger or Smith.
 
 
 12
 Gulf also contends that a new trial should not be required because it was Doucet's counsel who mentioned compensation during his direct examination of Doucet. Whether this resulted from some agreement between the parties that compensation might be mentioned we cannot determine, for neither the pretrial order nor the record mentions any such agreement. What is not in the pretrial order or on the record we have no way to know and are forbidden to consider. We can only review the record, and we do not take evidence to supplement or contradict it. The record shows that the trial court first mentioned compensation when instructing the jury at the start of the trial. Although Doucet's counsel did not then object, neither his failure to do so nor his subsequent reference to compensation, as we stated in the opinion, precluded his later objecting to the jury charge, if it was erroneous. When the court solicited objections to the charge, Doucet promptly objected.
 
 
 13
 Even if an explanation of Doucet's receipt of compensation were by this time permissible,[15] the instruction did not merely mention compensation; it made a factually incorrect statement. It stated that Gulf, the defendant, would be liable for compensation if the jury found Doucet to be Gulf's borrowed employee. It thus created the inference that Gulf would in some manner compensate Doucet regardless of the jury's findings on the borrowed employee issue. The record shows, however, that compensation was being paid by Danos & Curole's insurer, not by Gulf or its insurer. Of course, Doucet's counsel would have done better to object to any mention of compensation when the trial began. Nevertheless, his failure to do so did not waive his right to object to a later and incorrect reference in the court's instruction to the jury.
 
 
 14
 For these reasons, the application for rehearing is DENIED.
 
 
 
 *
 District Judge of the Middle District of Louisiana, sitting by designation
 
 
 [1]
 La.R.S. 9:2780 (West Supp.1985)
 
 
 [2]
 43 U.S.C.A. Secs. 1331-1356 (West 1986)
 
 
 [3]
 Id. at Sec. 1333(a)(2)(A)
 
 
 [4]
 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970)
 
 
 [5]
 28 U.S.C. Secs. 2671-2680 (1982)
 
 
 [6]
 Seckinger, 397 U.S. at 219, 90 S.Ct. at 889, 25 L.Ed.2d at 237 (Stewart, J., dissenting)
 
 
 [7]
 Id. at 209-10, 90 S.Ct. at 884, 25 L.Ed.2d at 231-32
 
 
 [8]
 497 F.2d 500 (5th Cir.1974)
 
 
 [9]
 Knapp v. Chevron, USA, Inc., 781 F.2d 1123 (5th Cir.1986)
 
 
 [10]
 Frazier v. Columbia Gas Dev. Corp., 596 F.Supp. 429 (W.D.La.1984); Bryant v. Platform Well Serv., Inc., 563 F.Supp. 760 (E.D.La.1983)
 
 
 [11]
 781 F.2d 1123 (5th Cir.1986)
 
 
 [12]
 Id. at 1130-31
 
 
 [13]
 784 F.2d 628 (5th Cir.1986)
 
 
 [14]
 Matte, at 630
 
 
 [15]
 See contra Simmons v. Hoegh Lines, 784 F.2d 1234, 1236-37 (5th Cir.1986)